UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ESZTER PRYOR, LOGAN KLINE, | ) | |
| MARISSA JOHNSON, and JANE | ) | |
| DOES 4-50, on behalf of themselves and all | ) | |
| Others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18-cv-2113-WTL-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| USA DIVING, INC.,  and | ) | |
| WILL BOHONYI, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT USA DIVING, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant USA Diving, Inc. ("USA Diving") respectfully submits its Brief in Support of its Motion to Dismiss the Amended Complaint.  For the reasons set out below, USA Diving respectfully requests dismissal of this case as to the counts alleged against it by all Plaintiffs because pursuant to Fed. R. Civ. P. 12(b)(6) the Amended Complaint fails to state a claim against USA Diving all of which is based on Defendant Will Bohonyi's conduct.

## I.     INTRODUCTION

Sexual abuse, and child abuse in particular, is a vile, and inexcusable offense.  Defendant Will Bohonyi ("Bohonyi") is accused of committing numerous sexual acts based on his direct relationship with Plaintiffs.  Plaintiffs bring a variety of civil causes of action based on federal criminal statutes against Bohonyi because he engaged in numerous sexual acts, in a private setting, at different times and different states with Eszter Pryor ("Ms. Pryor"), Logan Kline ("Ms. Kline") and Marissa Johnson ("Ms. Johnson").  Bohonyi interacted with Ms. Pryor, Ms. Kline

and Ms. Johnson through their mutual interest in the sport of diving.  Bohonyi, Ms. Pryor, Ms. Kline and Ms. Johnson were all members associated with USA Diving.  Plaintiffs seek to recover against USA Diving in this action not because of any of its intentional criminal actions, but solely resulting from and due to Bohonyi's conduct.

To be absolutely clear, USA Diving does not condone nor support the offensive and criminal conduct committed by Bohonyi and as described in the Amended Complaint.  USA Diving, however, did not undertake, engage in nor participate with Bohonyi's acts and the allegations prove as much.  Certainly, it can be well understood as a matter of legal principles that Bohonyi's personal and intentional criminal acts do not extend to USA Diving simply due to his membership association.  Consequently, civil liability does not exist, as a matter of law, as to USA Diving and the Plaintiffs' Amended Complaint is due to be dismissed as to USA Diving.

In this Motion, USA Diving seeks to dismiss all counts alleged against USA Diving as to all Plaintiffs.  Ms. Kline and Ms. Pryor bring causes of action under 18 U.S.C. §§ 1595 and 2255 (latter section as to Ms. Pryor only) seeking a civil remedy for alleged violations of federal criminal statutes, 18 U.S.C. §§ 1589, 1590 and 1591, which prohibit criminal conduct constituting forced labor or sex trafficking.  In summary, the allegations do not demonstrate the required *mens rea* that USA Diving knowingly, and with use of force or serious harm, harbored, recruited, transported, provided or obtained any of the Plaintiffs for purposes of Bohonyi receiving labor, services or "commercial sex acts."   Indeed, the law clearly requires that USA Diving knowingly participated in the acts committed by Bohonyi.  Because there is no way that this happened, and no factual evidence or circumstances have been alleged to support USA Diving engaging in such conduct, Counts 2-5 (as to Ms. Kline) and 7-11 (as to Ms. Pryor) must be dismissed.  Likewise, Counts 16 and 17, as to all Plaintiffs, for negligent supervision or

2

retention must be dismissed because they are barred by the applicable statute of limitations, and alternatively, Plaintiffs fail to state a claim because they concede in their allegations that Bohonyi was an employee of Indiana University or the Indiana Diving Club with respect to Ms. Johnson and Ms. Kline, and an employee, who was terminated, from the Ohio University State ("OSU") Diving Club regarding his actions with Ms. Pryor.  Indiana does not recognize a claim for negligent supervision or retention outside of the employer-employee context, and, therefore this serves as an additional reason for dismissal as to USA Diving.

## II.   ALLEGATIONS[1]

### A.   Ms. Johnson

Ms. Johnson was born in November, 1990.  *Id.*, ¶ 203.  Ms. Johnson earned a scholarship to dive at Indiana University ("IU") and moved to Bloomington, Indiana, in May 2008.  Am. Compl., ¶¶ 206-07.  Bohonyi was the coach of the Indiana University Diving Club from May 2008 until August 2008.  *Id.*, ¶ 209.  In August 2008, Bohonyi became a volunteer assistant diving coach at IU.  *Id.*, ¶ 210.  In October 2008, Bohonyi asked Ms. Johnson to send him a naked picture of herself.  *Id.*, ¶ 210.  Ms. Johnson resisted but then complied and sent Bohonyi several naked pictures of herself.  *Id.*, ¶ 218.   Ms. Johnson performed oral sex on Bohonyi in November 2008, when she was 17 years old.  *Id.*, ¶ 223.

### B.   Ms. Kline

Ms. Kline dove at IU from August 2009 through the summer of 2011. *Id.*, ¶ 227.  She trained at the Indiana Diving Club. *Id.*, ¶ 226.  Bohonyi was an assistant coach at Indiana Diving

---

[1] USA Diving does not concede or admit the truth of the allegations re-stated herein from the Amended Complaint. USA Diving reserves the right to contest and dispute the allegations re-stated in this Brief, in the unlikely event that USA Diving's Motion to Dismiss is not successful.  Similarly, many defenses, including statute of limitations and lack of retroactive application of changes in the federal statutes cited in the Amended Complaint exist in this case, and although not raised at this juncture all defenses of whatever nature are reserved by USA Diving.

Club.  *Id*., ¶ 233.  Although Ms. Kline had never engaged in any sexual act other than kissing with anyone else, Bohonyi quickly steered the relationship into a sexual one.  *Id*., ¶ 239.  He demanded oral sex from Ms. Kline within the first month and a half of meeting her, and in doing so he forced her to trade sex for diving coaching.  *Id*., ¶ 240.  Within the first months of their relationship, he engaged in sexual intercourse with her.  *Id*., ¶ 241.  Bohonyi requested and forced Ms. Kline into having at least one sexual act a day while he was acting as her coach.  *Id*., ¶ 242.  It is alleged he made clear to Ms. Kline that this exchange was required for him to continue coaching her as part of USA Diving.  *Id*., ¶ 243.  Bohonyi engaged in psychological coercion to force Ms. Kline to engage in sexual services in exchange for diving coaching.  *Id*., ¶ 244.  Ms. Kline feared that Bohonyi would lose interest in her if she refused his sexual demands, and that her diving would suffer because he would no longer coach her.  *Id*., ¶ 244.  Bohonyi routinely scheduled "drive-bys" of the residence where Ms. Kline lived, and he requested sex from Ms. Kline while in his car when doing so. *Id*., ¶ 245.  By her second summer in Bloomington, Bohonyi demanded sexual services on a regular basis, and he forced her to text him sexually explicit photographs of herself to his cell phone. *Id*., ¶ 246.  While he was acting as her coach, Bohonyi consistently required some form of sex from Ms. Kline on a daily basis.  *Id*., ¶ 247.  Bohonyi was extremely aggressive in making these demands and never took "no" as an answer.  *Id*., ¶ 252.  She was not free to refuse her sexual services and he forced her to provide him sexual services every time he demanded them.  *Id*.

On July 9 to 11, 2010, Ms. Kline traveled with Bohonyi and the Indiana Dive Club/IU to Christiansburg, Virginia for USA Diving Zone Championships, a mandatory qualifying meet preceding USA Diving's National Championship.  *Id*., ¶ 253.  Bohonyi traveled with the team of eight IU divers and he was the only coach.  *Id*., ¶ 254.  At this competition, Ms. Kline was forced

4

to engage in a sexual act with Bohonyi in his hotel room. *Id.*, ¶ 255.   In July 2011, Ms. Kline traveled with the IU Dive team to the University of California – Los Angeles (UCLA) to compete in Summer Nationals; this meet was a qualifier for the 2011 Pan Am Games.  *Id.*, ¶ 256. USA Diving/IU/Indiana Dive Club sponsored the athletes and coaches, funded their trip, paid their per diem, and paid their flight, hotel and other expenses related to Nationals.  *Id.*, ¶ 257. Bohonyi traveled with the team of approximately 25 divers as an IU coach.  *Id.*, ¶ 258.  At this competition, Bohonyi forced Ms. Kline to engage in numerous sexual acts in his hotel room because he was the diving coach and he pressured her to provide sexual services because he was the coach and she was his athlete.  *Id.*, ¶ 259.

### C.   Ms. Pryor

Ms. Pryor was born in in 1997 and she turned 18 on July 12, 2015.  *Id.*, ¶¶ 272, 344. Bohonyi forced Ms. Pryor to perform sexual services numerous times between August 2014 and February 2015.  *Id.*, ¶ 189.  Ms. Pryor decided to dive for the OSU Diving Club, which held practices on the Ohio State University campus in Columbus, Ohio.  *Id.*, ¶¶ 274-76.  In June 2014, while Ms. Pryor was babysitting for a mutual acquaintance of Bohonyi and Ms. Pryor, Bohonyi invited himself over. *Id.*, ¶¶ 279-80.  While there, Bohonyi was Snapchatting underage girls from the diving team. *Id.*, ¶ 281.  At the time, Bohonyi was the coach of the OSU Diving Club.  *Id.*, ¶ 282.  On July 4, 2014, Bohonyi told Ms. Pryor to send him naked pictures of herself.  *Id.*, ¶ 285. Ms. Pryor was 16 years old. *Id.*, ¶ 286.  On July 7, 2014, Bohonyi forced Ms. Pryor to perform oral sex on him on the Ohio State campus. *Id.*, ¶ 288.

Ten days later, on or about July 17, 2014, Bohonyi forced Ms. Pryor to engage in sexual intercourse.  *Id.*, ¶ 293.  During this trip, Ms. Pryor's 2012 Olympic-trial synchronized diving partner, Rachel Rubadue ("Ms. Rubadue"), became aware that Ms. Pryor was involved in a

5

sexual relationship with Bohonyi.  *Id*., ¶ 294.  Ms. Rubadue told her parents of the sexual

relationship between Ms. Pryor and Bohonyi.  *Id*., ¶ 295.  In turn, Ms. Rubadue's parents

informed the head OSU Diving Club coach, John Appleman, of the allegations that Ms. Pryor

was engaged in a sexual relationship with Bohonyi.  *Id*., ¶ 296.

Ms. Pryor obtained a protective order against Bohonyi.  *Id*., ¶ 324.  Nevertheless, Ms.

Pryor alleges that from September 2014 to March 2015 Ms. Pryor continued to engage in sexual

acts with Bohonyi on a weekly basis.  *Id*., ¶ 327.  Ms. Pryor had sex with Bohonyi the last time

in August 2015.  *Id*., ¶ 348.

As of October 30, 2014, Ms. Pryor obtained, by mutual agreement with Bohonyi a

protective order against Bohonyi.  See, Case No.: 14CVH-11185, *In re:  George Pryor, Jr. v.*

*William Bohonyi*, Court of Common Please, Franklin County, Ohio (request to take judicial

notice of public record).

### D.    **Bohonyi**

While employed by IU Diving Club or IU, Bohonyi knowingly obtained forced sexual

services from Ms. Johnson by means of serious harm or threats of serious harm.  *Id*., ¶ 499.

Bohonyi persuaded, induced, and coerced Ms. Johnson, a minor at the time, to engage in

sexually explicit conduct for the purpose of producing a visual depiction of such conduct,

knowing or having reason to know that such depiction would be transmitted through facility of

interstate or foreign commerce, specifically through computer or smartphone.  *Id*., ¶ 504.

While employed by IU/ Indiana Diving Club, Bohonyi sexually abused Ms. Kline on

numerous occasions.  See, Am. Compl.  He obtained forced sexual services from Ms. Kline by

means of serious harm or threats of serious harm.  *Id*., ¶ 387.  He manipulated her to believe that

if she did not perform such labor or services, she would suffer serious harm and damage to her

reputation and status as a diving athlete. *Id*., ¶ 388. Bohonyi knowingly recruited and fraudulently enticed Ms. Kline to come to Los Angeles, California, and to Christiansburg, Virginia, with the intention of forcing her into sexual labor and services for him. *Id*., ¶ 406. Bohonyi knowingly benefitted (financially and otherwise) from his recruitment, enticement, harboring, transport, and obtaining of Ms. Kline, and he received free sexual services and labor from her. *Id*., ¶ 407. Bohonyi knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Ms. Kline, and benefitted from her labor and services, knowing that means of force, fraud, coercion, and the combination of such means would be used to force Ms. Kline to engage in commercial sex acts. *Id*., ¶ 416.

While an employee of the OSU Diving Club/ Ohio State University, Bohonyi forced Ms. Pryor to perform sexual services numerous times between August 2014 and February 2015. *Id*., ¶ 189. When doing so, Bohonyi psychologically coerced Ms. Pryor into believing she was required to perform sexual services in exchange for her continued involvement in diving. *Id*., ¶ 190. Several of these sexual acts occurred on the campus of the Ohio State University. *Id*., ¶ 191. Several of these sexual acts occurred in Bohonyi's car before and after diving practice. *Id*., ¶ 192. Bohonyi knowingly obtained forced sexual services from Ms. Pryor by means of serious harm or threats of serious harm. *Id*., ¶ 432. Bohonyi knowingly recruited, enticed, harbored, transported, and/or obtained Ms. Pryor for labor or services. *Id*., ¶ 449. Bohonyi knowingly recruited and fraudulently enticed Ms. Pryor to come to Bethesda, Maryland, with the intention of forcing her into sexual labor and free sexual services for him. *Id*., ¶¶ 450-51. Bohonyi knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Ms. Pryor, and benefitted from her labor and services, knowing that Ms. Pryor had not attained the age of 18 years and would be caused to engage in commercial sex acts. *Id*., ¶ 465.

E.      **Ohio State University Diving Club**[2]

Bohonyi was employed as a coach by the OSU Diving Club.  *Id.*, ¶ 182.  In July and August 2014, the OSU Diving Club came into possession of hundreds of nude pictures of Ms. Pryor as a minor, and engaging in sexual acts as a minor.  *Id.*, ¶¶ 177-180.  The Ohio State Office of Human Resources investigated the allegations made by Ms. Pryor against Bohonyi.  *Id.*, ¶ 182.  On August 29, 2014, the Ohio State Office of Human Resources recommended Bohonyi be terminated.  *Id.*, ¶ 183.  This report was provided to USA Diving.  *Id.*, ¶ 184.  USA Diving investigated Bohonyi and in February 2015 placed him on the "permanently ineligible for membership."  *Id., ¶¶* 186-87.  Bohonyi was dismissed/fired from OSU Diving Club.  *Id.*, ¶¶ 268, 328.  OSU Diving reported Bohonyi to the Ohio State University Police Department.  *Id.*, ¶ 354.  Despite his termination from the OSU Diving Club, report to the police and issuance of a protective order, Ms. Pryor alleges that because of the delay in action by USA Diving between July 2014 and February 2015, Bohonyi continued to sexually prey on her, a vulnerable athlete forced to engage in sexual acts by Bohonyi.  *Id.*, ¶ 188.

F.      **USA Diving**

In addition to its Olympic duties, the United States Olympic Committee ("USOC") has been designated as the coordinating body for all amateur sports in the United States by the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), 36 U.S.C. § 220501 *et seq.*; Am. Compl. ¶ 31.  Under the Amateur Sports Act, the USOC is required to select a national governing body for each amateur sport. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 586 (7th Cir. 2001).  A "national governing body" means an amateur sports organization that is recognized by the USOC.  36 U.S.C.A. § 220501.  The USOC has chosen

---

[2] Ohio State Diving Club was dismissed as a defendant in this action by stipulation on August 30, 2018.

USA Diving as the national governing body ("NGB") for the Olympic sport of diving. Am. Compl. ¶¶ 32; 129. "[A]mateur sports organization" means a not-for-profit corporation, association, or other group organized in the United States that sponsors or arranges an amateur athletic competition. 36 U.S.C.A. § 220501. "[A]mateur athlete" means an athlete who meets the eligibility standards established by the national governing body or paralympic sports organization for the sport in which the athlete competes. *Id*.

For the sport that it governs, a national governing body's purpose is to promote competition, develop interest in the sport, coordinate conflicts with scheduling, encourage and support amateur athletic sports programs for individuals with disabilities, provide and coordinate technical information on physical training, equipment design, coaching, and performance analysis, and encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety. *Id*., ¶ 54, 36 U.S.C.A. § 220524.

Ms. Pryor, Ms. Kline and Ms. Johnson, as amateur athletes were associated members of the NGB for the sport of diving, USA Diving. *Id*., ¶¶ 134, 154, 156. Bohonyi was a member too.

Plaintiffs allege that to be a USA Diving member, as an individual athlete they must pay dues to USA Diving. *Id*., ¶ 156. It is also alleged that part of the dues paid by Plaintiffs went towards the financial grants awarded to Bohonyi and the clubs for which he coached by the USOC and USA Diving. *Id*., ¶ 157. For a diving club to be considered a USA Diving member club, like OSU Diving Club, the club must pay dues, meet certain minimum standards set out by USA Diving. *Id*., ¶ 158. It is further alleged that if the member club seeks to hold a USA Diving sanctioned event at the club, it must pay a fee. *Id*., ¶ 159. All those who seek to coach, judge, or participate in USA Diving-sanctioned events must also pay a membership fee. *Id*., ¶ 160.

9

USA Diving investigated Ms. Pryor's allegations against Bohonyi after it received a report from Ohio State University.  *Id*., ¶¶ 337-38.  USA Diving began keeping a list of "permanently ineligible members" in 2015.  Am. Compl. ¶ 149.  In February, 2015, Bohonyi was the first coach publicly placed on a permanently ineligible member list by USA Diving.  *Id*., ¶¶ 150, 303, 312.

It is alleged that USA Diving had knowledge that Bohonyi sexually assaulted athletes. *Id*., ¶ 358.  But, according to the Amended Complaint the first USA Diving possibly found out about Ms. Pryor's complaint against the prior acts and conduct by Bohonyi was July or August 2014, and likely later (although USA Diving denies this date is accurate). *Id*., ¶¶ 183, 358, 511.

It is alleged that USA Diving provided funding to Bohonyi and the clubs he coached for and he financially benefited from his participation in USA Diving-sanctioned events.  *Id*., ¶¶ 170-71.  It is also alleged that from 2008 to 2015, Bohonyi was the agent, servant, and/or employee of USA Diving because he coached USA Diving members at USA Diving member clubs and traveled with these teams to USA Diving-sanctioned events.  *Id*., ¶ 173.

## G. Causes of Action Listed in the Amended Complaint as to USA Diving

As to Ms. Kline:

Count 2:  1589(b)/1595:  alleging USA Diving knowingly benefitted from participating in a venture with Bohonyi in providing or obtaining Ms. Kline's services by means of force or serious harm and that USA Diving knowingly or recklessly participated in Bohonyi's scheme to force Ms. Kline into forced sexual acts.  Am. Compl. pp. 49-51.

Count 3 : 1590(a)/1595(a):  alleging USA Diving knowingly transported Ms. Kline to Los Angeles for a tournament and training.  USA Diving knowingly benefitted from participating in a venture with Bohonyi, and promoted Bohonyi with substantial assistance which

USA knew or should have known that Ms. Kline had been recruited, transported or obtained for labor or services.  Am. Compl. pp. 51-52.

Count 4:  1591(a)(1)/1595(a):  alleging USA Diving knowingly recruited, enticed, and transported Ms. Kline to Los Angeles for tournaments and training and benefitted from her labor and services, while knowing or in reckless disregard of the fact that means of force, fraud or coercion were used to force Ms. Kline to engage in commercial sex acts with Bohonyi.  Am. Compl. pp. 52-54

Count 5:  1591(a)(2)/1595(a):  alleging USA Diving knowingly benefitted from participation in a venture with Bohonyi, knowing or in reckless disregard of the fact that force, fraud, coercion, or threats of such, were used to cause Ms. Kline to engage in a commercial sex act with Bohonyi.  Am. Compl. pp. 54-55.

All of which allegedly occurred without USA Diving knowing of the private acts between Ms. Kline and Bohonyi at the time they are alleged to have occurred.  Am. Compl. ¶¶ 183, 358, 511 (July 2014 or 2015).

As to Ms. Pryor:

Count 7: 1589(b); 1595 (a); 2255:  alleging USA Diving knowingly benefitted from participating in a venture with Bohonyi in providing or obtaining Ms. Pryor's services by means of force or serious harm and that USA Diving knowingly or recklessly participated in Bohonyi's scheme to force Ms. Pryor into forced sexual acts.  And, that it knew or recklessly disregarded the fact that Bohonyi was obtaining Ms. Pryor's forced labor and sexual services.  *Id*., pp. 56-57.

Count 8:  1590(a); 1595(a); 2255:    alleging USA Diving benefitted from participating in a venture with Bohonyi which it knew or should have known that he was engaging in conduct violating Section 1590.  USA Diving promoted and provided assistance to Bohonyi which it

11

knew or should have known Ms. Pryor had been recruited, transported, or obtained [by means of force or serious harm] for labor or services.  *Id.*, pp. 58-59.

Count 9:  1590(b); 1591(d); 1595(a); 2255:  alleging USA Diving obstructed, interfered or prevented federal authorities from enforcing 18 U.S.C. §§ 1590 and 1591 by *not* taking action with respect to communications it allegedly received which is belied by the allegation that USA Diving placed Bohonyi on the first permanent ineligibility list.  *Id.*, pp. 59-60.

Count 10:  1591(a)(1); 1595; 2255:   alleging USA Diving knowingly recruited, enticed and transported Ms. Pryor to Maryland and various tournaments and training centers, and benefitted from her labor and services, knowing or in reckless disregard of the fact she would be used by Bohonyi to engage in commercial sex acts.  *Id.*, pp. 60-61.

Count 11:  1591(a)(2); 1595(a); 2255: alleging USA Diving knowingly benefitted from participation in a venture with Bohonyi, knowing or in reckless disregard of the fact that force, fraud, coercion, or threats of such, were used to cause Ms. Pryor to engage in a commercial sex act with Bohonyi.  *Id.*, pp. 62-63.

All of which allegedly occurred without USA Diving knowing of the private acts between Ms. Pryor and Bohonyi at the time they are alleged to have occurred.  *Id.*, ¶¶ 183, 358, 511 (July 2014 or 2015).

As to all Plaintiffs, Ms. Johnson, Ms. Kline and Ms. Pryor:

Counts 16 and 17:   Negligent Supervision and Retention:   generally, it is alleged that USA Diving had a duty to protect Plaintiffs from sexual abuse, harassment and exploitation by Bohonyi.  *Id.*, ¶ 509.  It is alleged elsewhere that Bohonyi was employed as a coach for either IU/ Indiana Diving Club, or the OSU Diving Club during the time the acts complained of by Plaintiffs occurred.  Am. Compl. ¶¶ 183, 209, 210, 233, 234, 282.

### III.   LEGAL STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must:

> "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir.2012) (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted).

*Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)(emphasis added).  But "legal conclusions or conclusory allegations that merely recite a claim's elements are not entitled to any presumption of truth." *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).  The Complaint "must contain more than labels and conclusions or a formalistic recitation of the elements of a cause of action." *Powers ex rel. Nexes Grp., LLC v. Telrite Corp.*, 2010 WL 5092975, at *2 (S.D. Ind. Dec. 7, 2010).  "The required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011)("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

IV.    <u>ARGUMENT</u>

    A.    <u>Dismissal of Counts 2, 3, 4 and 5 by Ms. Kline Against USA Diving</u>

        1.    **Ms. Kline Fails to State a Claim Under Count 2 Against USA Diving Under Section 1589**

To demonstrate criminal liability under Section 1589 it requires:

*Forced labor*

**(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

**(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
**(2)** by means of serious harm or threats of serious harm to that person or another person;
**(3)** by means of the abuse or threatened abuse of law or legal process; or
**(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

**(b)** Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C.A. § 1589.

Section 1589 was "passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir.), *as amended* (Mar. 3, 2017), *cert. denied,* 138 S. Ct. 448, 199 L. Ed. 2d 329 (2017) (citing *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," as well as through "physical or legal coercion." *Id*. (citing *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (internal

quotation marks omitted); *see also United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008) ("Section 1589 is not written in terms limited to overt physical coercion, and we know that when Congress amended the statute it expanded the definition of involuntary servitude to include nonphysical forms of coercion.").  From the start, the conduct alleged by Ms. Kline is not the sort of trafficking of labor or services (involuntary servitude) that Section 1589 was intended to address.

First, nowhere in the 527 paragraphs of the Amended Complaint is it alleged that USA Diving knew that Bohonyi was having sexual relations with Ms. Kline at the time it was happening.  It is alleged that the last sexual encounter between Bohonyi and Ms. Kline was July 2011.  Am. Compl. ¶ 256.  It is further alleged that the earliest USA Diving allegedly knew "Bohonyi sexually assaulted female athletes" was July 2014 (which USA Diving disputes).  *Id.* at ¶ 358.  Thus, according to the Amended Complaint itself, USA Diving could not have knowingly been involved in a venture.  Similarly, it cannot be said that USA Diving knowingly benefitted, nor did it know or act in reckless disregard of a fact that it and Bohonyi were engaged in providing or obtaining labor or services by force from Ms. Kline.  Accordingly, Count 2 cannot be sustained and must be dismissed under the facts alleged.

"[A]lthough the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion" and "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012); *McCauley* at 616.  Where "a claimant simply recites the statutory elements of a cause of action, dismissal is appropriate."  *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1067 (N.D. Ill. 2013), *aff'd,* 791 F.3d 729 (7th Cir. 2015).

15

"[A]lleged 'facts' that are actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss." *McCauley* at 617.

In Count 2, the Amended Complaint simply tracks, nearly verbatim, the language of Section 1589, but fails to provide any facts in support of the recitation of the statutory elements. By example, throughout the Amended Complaint one of the statutory elements, "the use of force" is stated in conclusory fashion over and over again, however, no fact is alleged to describe the acts that were undertaken by Bohonyi, let alone USA Diving, equating to the use of force. Not one time is it alleged, as is required under the statute, that Bohonyi, for instance, grabbed Ms. Kline, or pushed her into the vehicle, or held her against her will or prevented her from leaving, or locked a door, or used his weight or strength to hold her down, or threatened to do any of these acts, or yelled at her, or threatened her with bodily or serious harm. Indeed, the Amended Complaint does not allege the most critical of facts to be present in order to state a claim under Section 1589, in that, the basis for concluding force was used and was known by USA Diving are totally missing.

It is further not alleged that Bohonyi provided or obtained Ms. Kline's labor or services in terms of "forced labor" within the intended meaning of the statute. Moreover, no labor or services were provided to the benefit of USA Diving under its own threat of force, or serious harm, or as a result of threats known to USA Diving to be used by Bohonyi against his victims. The Sixth Circuit Court of Appeals acknowledged in *United States v. Callahan*, 165 F. Supp. 3d 639, 651 (N.D. Ohio 2014), *aff'd,* 801 F.3d 606 (6th Cir. 2015) that Section 1589 does not define the phrase "labor or services" and so it must be viewed in accord with its ordinary meaning." The Court went on to consider that Webster's Third New International Dictionary (1993) defines "labor" as "expenditure of physical or mental effort esp. when fatiguing, difficult, or

compulsory," and "service" as "the performance of work commanded or paid for by another." *Id*. There is no allegation in the Amended Complaint explaining the type of work or labor Bohonyi allegedly received as a result of his alleged use of force, and, in turn, how USA Diving knew of the receipt of that work, and shared in its benefits.  Dismissal is warranted because Count 2 fails to state a claim.

        **2.**      **Count 3 Based on an Alleged Violation of Section 1590 Fails to State an Actionable Claim Against USA Diving**

Section 1590 criminalizes trafficking with respect to peonage, slavery, involuntary servitude or forced labor.  Section 1590 provides:

> *Trafficking with respect to peonage, slavery,*
> *involuntary servitude, or forced labor*
>
> **(a)** Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

18 U.S.C.A. § 1590.  As before, no non-conclusory factual allegations have been advanced in the Amended Complaint to show a basis that USA Diving knew of any alleged activity between Ms. Kline and Bohonyi.  Likewise, there is no factual allegation to support that USA Diving knowingly recruited, harbored, transported, provided or obtained Ms. Kline, or that it did so for purposes of labor or services.

Indeed, just like under Section 1589, the activity plainly referenced under Section 1590 predominantly must be centered and limited to forced "work".  See, *Nabong v. Paddayuman*, 289 F. Supp. 3d 131 (D.D.C. 2018)(worker brought action against employers); *Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F. Supp. 3d 430, 434 (E.D.N.Y. 2017)(work for a nursing

home under employment contract); *Velez v. Sanchez*, 754 F. Supp. 2d 488, 491 (E.D.N.Y. 2010), *aff'd in part, vacated in part,* 693 F.3d 308 (2d Cir. 2012)(forced to work in the home); *Martinez v. Calimlim*, 651 F. Supp. 2d 852, 856 (E.D. Wis. 2009)(parent defendants essentially enslaved her, i.e., forced her to work for them for little or no pay, concealed her presence in their home).

Procedural law mandates that Ms. Kline do more than merely track and recite the language used in Section 1590 in an attempt to plead a cause of action.  It can quickly be discerned that the Amended Complaint does nothing more than restate the statute.  Rather, Ms. Kline must come forward with facts.  More specifically, facts supporting the conclusion, or at least an inference, that USA Diving knowingly committed one of the acts outlined in Section 1590, and did so with the intended purpose for Ms. Kline to be forced to work.  Not one such fact has been specially alleged.

Accordingly, Count 3 is due to be dismissed because it is implausible that the allegations rise to the level of a violation of Section 1590, or to conclude that USA Diving had knowledge or participated in any conduct, and better yet because the Amended Complaint is remiss of any factual support that Ms. Kline provided work to Bohonyi, but more importantly to USA Diving.

### 3.      A Valid Claim has Failed to Be Stated by Ms. Kline Under Counts 4 and 5 Relying on Section 1591

Counts 4 and 5 are premised on the same criminal statute, 18 U.S.C. § 1591. Count 4 references Section 1591(a)(1), while Count 5 cites to sub-section (a)(2).  The relevant statute in effect that would cover Ms. Kline's allegations under Section 1591 provided, in part:

*Sex trafficking of children or by force, fraud, or coercion*

**(a)** Whoever knowingly—

18

> **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
> **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

8 U.S.C.A. § 1591[3].  "Participation in a venture" has been defined to mean knowingly assisting, supporting, or facilitating a violation of subsection (a)(1). 18 U.S.C.A. § 1591.

Among other considerations, in order to state a plausible claim under Section 1591, Ms. Kline was required to allege facts that USA Diving <u>knowingly</u>:

- Recruited, enticed, harbored, transported, provided, obtained or maintained Ms. Kline, or benefited, financially or by receiving anything of value, <u>from participation in a venture</u> which has engaged in those acts of harboring, etc.;

- Or, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion (defined as serious harm or physical restraint) were used; and

- Used to cause the person to engage in a "commercial sex act", or that person has not attained the age of 18 and will be caused to engage in a "commercial sex act."

"Commercial sex act" carries the following definition under Section 1591:  "any sex act, on account of which anything of value is given to or received by any person."

The Amended Complaint clearly contradicts any finding that USA Diving knew of Bohonyi's acts.  It is also true that there is no allegation that USA Diving knowingly participated

---

[3] This version covers December 23, 2008 to May 28, 2015.

in a venture with Bohonyi with respect to his conduct in private with Ms. Kline.  To the contrary, according the allegations, which must be accepted as true at this juncture, Ms. Kline alleges the first USA Diving would know of Bohonyi's conduct was at least three (3) years after their last engagement.  On these facts, no claim can be sustained against USA Diving under Section 1591.

Secondly, the allegations do not show that USA Diving had knowledge that Bohonyi was allegedly using force, through physical restraint or threat of serious harm, against Ms. Kline.  It must follow that without such knowledge, USA Diving could not be accused of knowingly "participating" in such conduct either.  Another fatal result to the viability of Counts 5 and 6.

Here, to adequately allege participation in a venture in violation of Section 1591(a)(2), Ms. Kline "must plead facts suggesting that [USA Diving] (i) knowingly benefitted, (ii) from participation in a commercial sex trafficking venture, (iii) while knowing (or in reckless disregard of the fact) that means of force, fraud or coercion would be used to cause the trafficked person to engage in a commercial sex act."  *Noble v. Weinstein*, 2018 WL 3863452, at *13 (S.D.N.Y. Aug. 14, 2018)(citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). Indeed, Section "1591(a)(2) targets those who participate in sex trafficking" which requires proof that the "defendant actually participated in a *sex-trafficking venture.*"  *Afyare*,  at 286 (6th Cir. 2016).  Because "liability, cannot be established by association alone, [Ms. Kline] must allege specific conduct that furthered the sex trafficking venture.  Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture."  *Id*.  "In other words, some participation in the sex trafficking act itself must be shown."  *Id*.  The Courts in *Afyare* and *Noble* both held that Section 1591(a)(2) targets those who *participate in sex trafficking*; it does not target [those] who turn a blind eye to the source of their financial sponsorship."  *Id*. (citing *Afyare* at 286).  Thus, allegations

20

implicating USA Diving as a "participant" in Bohonyi's conduct is required.  Not only was it not alleged, it is impossible to meet this standard under the allegations because Ms. Kline admits that USA Diving was not even aware of Bohonyi's conduct, let alone participating in it.  There being absolutely no factual link between Bohonyi's acts and USA Diving's participation in those acts, fatally dooms Counts 4 and 5 and requires dismissal.

Thirdly, it cannot be seriously understood or inferred that USA Diving knowingly caused Ms. Kline to engage in a "commercial sex act" or that it would have benefitted from such conduct by Bohonyi purely to meet his own prurient interests.  Certainly, it cannot be reasonably believed that Bohonyi was advancing any interest of USA Diving, acting on its behalf or benefitting it.  For the foregoing reasons, Counts 4 and 5 should be dismissed for failure to state a claim.

### 4.    Sections 1589, 1590, 1591 By Virtue of 1595 Do Not Provide a Civil Cause of Action for Aiding and Abetting and Therefore Those Claims Must be Dismissed

To be clear, aiding and abetting liability is not provided for in Section 1595.  *Noble*, at *14 (S.D.N.Y. Aug. 14, 2018).  "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, *there is no general presumption that the plaintiff may also sue aiders and abettors.*"  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 183 (1994)(emphasis original). "The Supreme Court's holding in *Central Bank*, coupled with the absence of authorities supporting aider and abettor liability under Section 1595, militates against reading a form of liability into a statute that does not provide for it." *Id*. (citing 18 U.S.C. § 1591, 1595).  Regardless, the Amended Complaint does not allege that USA Diving gave "substantial assistance" to Bohonyi, let alone that it had knowledge of his role in illegal conduct – both

necessary elements to state a claim for aiding and abetting, even if it applied here, which it definitely does not.  All claims attempted to be asserted by Ms. Kline on the grounds that USA Diving should be civilly liable under Sections 1589, 1590, or 1591 by virtue of 1595 must be dismissed for failure to state a claim.

> **5.    All of Ms. Kline's Purported Claims Under Section 1595 Must Be Dismissed Due to the Failure to State a Claim for Predicate Violations Under Sections 1589, 1590 and 1591**

Counts 2 through 5 seek to bring a civil action under Section 1595 for alleged violations of criminal statutes found under Sections 1589, 1590 and 1591.  Section 1595 provides in relevant part,

> **(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C.A. § 1595.  As shown above, Ms. Kline has not alleged facts to state a plausible claim against USA Diving under Count 2 (§1589), 3 (§1590), 4 (§1591(a)(1)), or 5 (§ 1591(a)(2)).  Thus, Ms. Kline has failed to state a claim under Section 1595 on all fronts and Counts 2 through 5 are due to be dismissed.

> ### B.    Dismissal of Counts 7, 8, 9, 10, and 11 by Ms. Pryor Against USA Diving is Warranted

All of Ms. Pryor's claims, whether under 18 U.S.C. § 1595(A) or § 2255 (Civil Remedy for Personal Injuries), overlap and are based on alleged predicate violations of Sections 1589, 1590 and 1591.   Section  2255 (applicable between March 7, 2013 to February 13, 2018) provides in relevant part:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591 … and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

Thus, Counts 7, 8, 9, 10 and 11 are dependent upon whether sufficient allegations have been made to demonstrate a viable claim under Sections 1589, 1590 or 1591.  Those counts cannot be sustained by any other means.  Accordingly, because Ms. Pryor has failed to allege a plausible claim, as a matter of law, against USA Diving under Sections 1589, 1590 or 1591, Counts 7 though 11 are due to be dismissed.

### 1.     Dismissal of Count 7 Under Sections 1589(b) 1595 (a) and 2255

The same statute quoted above for Section 1589 controls as to Ms. Pryor for her Count 1.  Thus, she must allege that USA Diving: (a) knowingly provided or obtained her labor or services, and (b) by means of force, threats of force, physical restraint or threats of physical restraint or by means of serious harm or threats of serious harm.  Nowhere in the Amended Complaint is it alleged that USA Diving committed this specific conduct.  It did not receive labor or services from Ms. Pryor by its use of force or serious harm or threats of force or serious harm.

Alternatively, to successfully state a claim under Section 1589, specifically 1589 (b) as plead, Ms. Pryor had to present factual allegations that USA Diving "knowingly" benefitted from participation in a venture which it has engaged in "providing or obtaining labor or services" by force or serious harm or threats of force or serious harm.  In other words, the Amended Complaint has to allege that USA Diving knew Ms. Pryor provided "labor or services" and it resulted from Bohonyi's conduct, that Bohonyi used force or serious harm, or threats of force or serious harm to obtain the labor or services, and that it was receiving a benefit.  Moreover, it

23

must be specifically alleged by facts that USA Diving participated in Bohonyi's conduct.   While Count 7 runs through the language used in Section 1589, no "facts" are alleged as to these required elements.   Most critically, it is not alleged that USA Diving <u>knowingly participated</u> in conduct with Bohonyi.   And, it did not.

The Amended Complaint fails to allege facts linking Bohonyi's conduct, while he was allegedly a coach and Ms. Pryor a member of the OSU Diving Club, to any labor or services received from Bohonyi's improper and unlawful conduct that USA Diving knowingly received or had any appreciation that it was receiving any attendant benefit, financially or otherwise. Indeed, it has not been alleged that USA Diving was a participant, knowingly or otherwise, in any sort of "venture" with Bohonyi with respect to his specific conduct with Ms. Pryor.

Indeed, it is not alleged that USA Diving would have even known of Bohonyi's prior acts committed while at the OSU Diving Club, outside of the Ohio State Office of Human Resources recommending the termination of Bohonyi from the OSU Diving Club to USA Diving on August 29, 2014.  See, Am. Compl. ¶¶ 183-84.   By this time, Ohio State had reported Bohonyi to the Ohio State University Police Department, and Ohio's Child Protective Services.   Thus, by virtue of the allegations taken together, Bohonyi was terminated from Ohio State by the time, as alleged in the Amended Complaint, that USA Diving allegedly learned of Bohonyi.   As a result, taking the allegations as true, it has not been alleged that USA Diving knowingly participated in any conduct between Bohohyi and Ms. Pryor, and by the allegations, Bohonyi was no longer in a position through Ohio State to be in contact with Ms. Pryor as her coach.   Moreover, a protective order had been issued shortly after OSU's report.   Consequently, it cannot be shown or inferred that USA Diving was a knowing and willing participant in any of Bohonyi's acts, presumably done in private, with Ms. Pryor.

Another very critical fact that is missing from the Amended Complaint is how USA Diving would have ever known that Ms. Pryor was still in contact with Bohonyi after his termination, the entry of a protective order and Ohio State's report to the police.  It is not reasonable to infer that USA Diving did know or would have known, particularly to the degree that it can be alleged that USA Diving "participated" in any venture with Bohonyi under the premise that he would receive labor or services from her.  Similarly, it was Bohonyi's prurient interests – and none of USA Diving's beneficial interests – that were at the heart of Bohonyi's misdeeds.

Count 7 seeks to establish liability against USA Diving on an "aiding and abetting" theory under Section 2255, however, just like Section 1595, because Congress did not clearly express a basis for liability under such a theory, the statute does not provide such a claim.  See, *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276 (D. Conn. 2013)(secondary liability under aiding and abetting theory does not exist under Sections 1595 or 2255); *Doe v. Hansen*, 2018 WL 2223679, at *5 (E.D. Mo. May 15, 2018)(civil remedy provision of Section 2255 does not permit claims for secondary or vicarious liability).

For these reasons, Count 7 should be dismissed for failure to state a claim against USA Diving because it lacks the requisite factual foundation to support a claim, and it merely rehearses the elements of Section 1989 without any support from substantive facts.

### 2.       Dismissal of Count 8  Under Sections 1590(a) 1595 (a) and 2255

Section 1590(a) is restated above.  As with the allegations brought by Ms. Kline under Section 1590(a), Ms. Pryor does not allege that USA Diving actually committed any of the acts thereunder (i.e. knowingly recruiting, harboring, transporting, providing or obtaining labor or services).  Instead, the Amended Complaint expressly states "Bohonyi knowingly recruited,

25

enticed, harbored or transported and/or obtained Estee [Ms. Pryor] for labor or services." Am. Compl. ¶ 449.  It is also alleged that Bohonyi knowingly benefitted from this conduct.  *Id*. at ¶ 451.  Section 1590(a) itself does not include language extending criminal liability to a person who knowingly participates in a venture and receives something of value.  Rather, civil liability based on Section 1590 only exists by virtue of Section 1595(a) to the "perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)".

When it comes to USA Diving, the Amended Complaint, conclusively, and without a factual basis, says Bohonyi acted as its agent, and USA "knowingly benefitted from participating in a venture with William Bohonyi".  *Id*. at ¶¶ 452-53.  To survive a motion to dismiss, the Amended Complaint must do more than recite the elements or language of Section 1595.  It must provide facts that when taken as true establish that USA Diving *knowingly participated* in the sex acts Bohonyi performed in private, and did so with USA Diving's understanding that it was benefitting from conduct that USA Diving had no idea Bohonyi was engaging in with Ms. Pryor in the first place.  Pursuant to the Amended Complaint, it is not alleged that USA Diving willingly and knowingly participated with Bohonyi in any sort of way.  Consequently, Count 8 fails to state a claim against USA Diving under Section 1595(a), because, other than conclusory statements tracking the verbiage used in the statute, without supporting facts, the Amended Complaint makes no factual connection between Bohonyi's act and USA Diving knowingly participating in those acts to receive labor or services from Ms. Pryor.  It is equally true that USA Diving benefited in no way, nor did it intend to benefit, from Bohonyi's secret acts with Ms. Pryor.  As such, Count 8 must be dismissed.

26

3.      **Count 9 Purports to Bring a Claim Against USA Diving for
Allegedly Obstructing, Interfering or Preventing the
Enforcement of Sections 1590 or 1591**

Ms. Pryor has plead herself out of Court on this particular alleged claim.  The Amended

Complaint confirms that USA Diving did *administratively* investigate Ms. Pryor's accusations

against Bohonyi, and did take action by finding him permanently ineligible and publishing him

as the first coach on the permanently ineligible list on USA Diving's website.  It is further

alleged that the matter had been referred to law enforcement by Ohio State before Ohio State's

report, and that Bohonyi had been terminated as Ms. Pryor's coach, again prior to the matter

being raised to USA Diving.  By comparison, there is not one allegation that USA Diving

contacted law enforcement to impede any investigation – to the contrary – Ms. Pryor alleges

USA Diving did "nothing."  Moreover, the Amended Complaint does not identify the law

enforcement agency or branch or officer with whom USA Diving allegedly engaged in

obstructive behavior.  Mere conclusory allegations, as are found under Count 9, are not enough

to survive a motion to dismiss.

There is no allegation that USA Diving altered evidence, did not cooperate in any law

enforcement allegation, ignored Ms. Pryor's request for an administrative investigation (Bohonyi

was listed as permanently ineligible) – even though this is not the type of enforcement action

contemplated by a federal criminal statute, or that it prevented anyone in initiating a criminal

investigation or prosecution of charges under Sections 1590 or 1591.  It is also accurate that

there has been no allegation that there was a pending federal agency, government or court action

undertaken to criminally enforce Section 1590 or 1591 (it has to be criminal because neither

statute provides a civil private right of action) to which USA Diving interfered or obstructed.

Accordingly, given that there is no allegation that an enforcement action was initiated by the

federal government under Sections 1590-91, it cannot be alleged that USA Diving interfered or obstructed with an enforcement action and, therefore, Count 9 must be dismissed.

> **4.   Counts 10 and 11 Purporting to Assert Claims against USA Diving Under Sections 1591(a)(1) and (2), 1595(a) and 2255 Are Due to Be Dismissed**

The elements of the criminal sex trafficking statute of Section 1591 are outlined *supra*. From the outset, it has been held that Section 1591 does not criminalize the act of engaging in commercial sex. *U.S. v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015). Thus, any conduct based on Bohonyi engaging in what might be described as "commercial sex" under Section 1591 is not actionable conduct as a matter of law. Ms. Pryor's allegations under Section 1591 suffer from the same lack of substance as Ms. Kline's allegations.

There is also absolutely no factual support in the Amended Complaint to show that USA Diving committed any of the acts under Section 1591(a)(1) which would require a factual showing that USA Diving knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained Ms. Pryor by means of force or serious harm, or threats of force or serious harm, to engage in *or for the purpose of* a commercial sex act with Bohonyi. It is not even alleged that USA Diving was aware at any time that Bohonyi and Ms. Pryor were engaging in sexual acts, let alone that USA Diving <u>knowingly</u> participated in or arranged for it. Truly, USA Diving was never a participant. Consequently, no claim is stated under Section 1591(a)(1) against USA Diving for Bohonyi's offensive acts.

Also, as previously explained in this Brief, to fall within Section 1591(a)(2) it must be alleged that USA Diving was an active and <u>knowing</u> participant in a venture causing Bohonyi to commit the elicit acts performed by Bohonyi as described in the Amended Complaint. Instead, it

misses the mark as no specific facts are advanced to show USA Diving's knowing involvement or any criminal activity on its part, or in conjunction with Bohonyi's self-serving acts.

Counts 10 and 11 repeat the allegation under Section 1591 that USA Diving is liable for "aiding and abetting" Bohonyi, however, as clearly set out before, no such claim is recognized nor viable, as a matter of law, under Section 1591.   Thus, Counts 10 and 11 are due to be dismissed for failure to state a claim.

**C.**    **Counts 16 and 17 as to Ms. Pryor, Ms. Kline and Ms. Johnson for Negligent Supervision and Retention Are Due to Be Dismissed Because They Are Barred by the Two-Year Statute of Limitations and USA Diving Was Not Bohonyi's Employer**

**1.**    **Plaintiffs' Negligent Supervision and Retention Claims are Barred by the Statute of Limitations**

Plaintiffs purport to bring claims under Counts 16 and 17 for Negligent Supervision and Retention, respectively.  "Indiana has a two year statute of limitations period for actions involving negligent retention." *Elwell v. First Baptist Church of Hammond, Inc.*, 2016 WL 4920021, at *3 (N.D. Ind. Sept. 15, 2016) (citing *Konkle v. Henson*, 672 N.E.2d 450, 458 (citing Ind. Code § 34–1–2–2(2)).  Negligent retention and supervision are a species of negligence. *Id*.

A motion to dismiss for failure to state a claim may be an appropriate means of raising the statute of limitations. *In re Estate of Carroll*, 436 N.E.2d 864, 865 (Ind. Ct. App. 1982). When the complaint shows on its face that the statute of limitations has run, the defendant may file a Rule 12(b)(6) motion. *Elwell* at *3*. The determination of when a cause of action accrues is generally a question of law. *Id*. (citing *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84 (Ind. 1985).

Here, Ms. Johnson alleges that the last interaction she had with Bohonyi was November, 2008 when she was 17 years old.  Am. Compl. ¶ 223.  Thus, giving Ms. Johnson the benefit of the doubt that she turned 18 on December 31, 2008 (which is doubtful and generous), the statute

of limitations for negligent supervision or retention expired on December 31, 2010.  This action was not filed until July 11, 2018.  Thus, Ms. Johnson's state law tort actions for negligent supervision or retention were filed after the expiration of the statute of limitations, are barred and should be dismissed.

For Ms. Kline, she alleges the last sexual act with Bohonyi occurred in July 2011.  *Id.*, ¶ 256.  Ms. Kline was a freshman at IU in 2009. *Id.*, ¶ 227.  It is understood that Ms. Kline was 18 by this time, however, assuming for purposes of this Motion that she did not turn 18 until December 31, 2010 (which is doubtful and generous), her negligent supervision and retention claims expired on December 31, 2012.  This action was not filed until July 11, 2018.  Thus, Ms. Johnson's state law tort actions for negligent supervision or retention were filed after the expiration of the statute of limitations, are barred and should be dismissed.

With respect to Ms. Pryor, she turned eighteen on July, 12, 2015.  *Id.*, ¶ 344.  She alleged the last sexual encounter she had with Bohonyi was August 2015.  Applying the statute of limitation, Ms. Pryor's negligent supervision and retention claims asserted against USA Diving expired in August 2017, at the latest.  This action was not filed until July 11, 2018, and, therefore, Ms. Pryor's negligent supervision and retention claims are barred by the statute of limitations and should be dismissed.

When a defendant raises the issue of the statute of limitations defense and puts evidence before the court to show that the actions at issue took place outside the statute of limitations period, the burden is on the plaintiff to show that the acts occurred within the limitations period.  *Elwell* at *3 (citing *Conard v. Waugh*, 474 N.E.2d 130, 134 (Ind. Ct. App. 1985).  For the reasons provided above, Counts 16 and 17 against USA Diving for negligent supervision and

retention should be dismissed as to all Plaintiffs, including Ms. Johnson, Ms. Kline and Ms.

Pryor, because they are barred, as a matter of law, under the applicable statute of limitations.

> **2.      It is Alleged that IU, Indiana Diving Club or OSU Diving Club Employed Bohonyi at the Time of the Incidents Alleged – Not USA Diving**

When considering state law claims under supplemental jurisdiction arising under federal

question jurisdiction, the court applies the choice of laws rules of the state in which it sits.

*Kempf v. Mitsui Plastics, Inc.*, 1996 WL 31179, at *3 (N.D. Ill. Jan. 25, 1996)(citing 28 U.S.C. §

1367); *D.S. v. E. Porter Cty. Sch. Corp.*, 981 F. Supp. 2d 805, 815 (N.D. Ind. 2013), *aff'd*, 799

F.3d 793 (7th Cir. 2015).

In Indiana, a cause of action for negligent supervision and retention requires plaintiff to

allege and establish an employer-employee relationship.  Indiana law has not recognized a claim

for negligent supervision or retention outside of the employer-employee relationship.  See, *Doe*

*No. 62 v. Delta Tau Delta Beta Alpha Chapter*, 2018 WL 1858202, at *10 (S.D. Ind. Apr. 18,

2018)(no Indiana case concluding that a negligent retention and supervision claim could apply

outside of the employment or master-servant context). Indeed, in the very recent *Doe No. 62*

case, the Court found "no legal basis upon which to extend an employer-employee duty to the

context of a fraternity chapter to its members."  *Id*. at *11.  Likewise, applying the reasoning in

*Doe No. 62*, this Court should not extend the negligent supervision claim beyond the context of

an employer-employee relationship to now cover an NGB, USA Diving, and one of its members.

Moreover, negligent retention and supervision is a distinct tort from *respondeat superior*;

it may impose liability on an <u>employer</u> when an employee "steps beyond the recognized scope of

his [or her] employment to commit a tortious injury upon a third party." *Clark v. Aris, Inc*., 890

N.E.2d 760, 765 (Ind. App. Ct. 2008); *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. App. Ct. 2009)(emphasis added).

Here, it is alleged that Bohonyi was the coach for IU or IU Diving Club when he engaged in the offenses against Ms. Johnson and Ms. Kline.  Whereas, it is not specifically alleged that Bohonyi was acting as an employee for USA Diving during the alleged encounters with Ms. Johnson and Ms. Kline.  Consequently, even if Ms. Johnson or Ms. Kline could survive the statute of limitations defense, their alleged claims for negligent supervision and retention against USA Diving under Counts 16 and 17 must be dismissed because it was specifically alleged that Bohonyi was working as a coach for IU or IU Diving Club at the time they complain about his conduct.

Likewise, for Ms. Pryor, when it came to the specific allegations about Bohonyi, she expressly alleged he was in Ohio working as a coach for the OSU Diving Club when she was subject to his acts.  Indeed, Ms. Pryor alleges that Ohio State University conducted an investigation and that either it or OSU Diving Club, or both, dismissed and terminated him.   As a result, if Ms. Pryor could overcome the statute of limitations defense, her claims for negligent supervision and retention against USA Diving fail, in any event, because the allegations show OSU Diving Club was Bohonyi's employer.  For all of the reasons given above, Counts 16 and 17 must be dismissed against USA Diving.

## IV.   CONCLUSION

USA Diving respectfully requests the Court to grant its Motion to Dismiss and pursuant to Rule 12(B)(6) dismiss Counts 2-5 and 7-11 brought under the predicate criminal offenses found in Sections 1589, 1590 and 1591 and to dismiss Counts 16 and 17 for Negligent Supervision and Retention because Plaintiffs do nothing more than track and recite the elements

of the federal criminal statutes and have not properly alleged facts supporting those claims, most particularly, that USA Diving knowingly participated in the acts of Bohonyi with regard to Counts 2-5 and 7-11 and because Counts 16 and 17 are barred by the statute of limitations and, alternatively, because USA Diving was not Bohonyi's employer.  Accordingly, Counts 2-5, 7-11, 16, and 17 are due to be dismissed, thereby resulting in the dismissal of USA Diving.

Respectfully submitted,

*/s/ Kristopher N. Kazmierczak*
Bernard L. Pylitt, Atty. No. 5851-49
Kristopher N. Kazmierczak, No. 19430-49
KATZ KORIN CUNNINGHAM PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Telephone: 317-464-1100 Facsimile: 317-464-1111
Email: bpylitt@kkclegal.com
        kkaz@kkclegal.com

*Attorneys for USA Diving, Inc., Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of October, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF. Parties may access this filing through the Court's system:

Jessica A. Wegg
Jonathan Charles Little
SAEED & LITTLE LLP
jessica@sllawfirm.com
jon@sllawfirm.com

Bernard L. Pylitt
Kristopher N. Kazmierczak
KATZ KORIN CUNNINGHAM PC
bpylitt@kkclegal.com
kkaz@kkclegal.com

Rex A. Sharp
Larkin E. Walsh, *Pro Hac Vice*
Ryan C. Hudson, *Pro Hac Vice*
Scott B. Goodger, *Pro Hac Vice*
REX A. SHARP, P.A.
rsharp@midwest-law.com
lwalsh@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

*/s/ Kristopher N. Kazmierczak*
Kristopher N. Kazmierczak

KATZ KORIN CUNNINGHAM PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Telephone: 317-464-1100
Facsimile: 317-464-1111
Email: bpylitt@kkclegal.com
        kkaz@kkclegal.com

34